IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID HAUFF,

       Plaintiff,

vs.

MORGAN PETTERSON and
SAFECO INSURANCE COMPANY
OF AMERICA,

       Defendants.

No. 1:09-cv-00639 PJK-DJS

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Plaintiff David Hauff's

Second Motion to Certify as a Class Action Suit filed September 11, 2009.  Doc.

15.  Plaintiff seeks to certify a class to challenge Defendant Safeco Insurance

Company of America's policy of reducing lost wage claims in uninsured and

underinsured motorist cases by 20% for taxes that the insured would have paid.

Upon consideration thereof, the motion is not well taken and should be denied.

<u>Background</u>

Plaintiff superseded its original state court motion for class certification,

Doc. 8, Ex. K, with the present federal motion, Doc. 15.  For purposes of this

motion, this court accepts the substantive, nonconclusory allegations of the

Plaintiff as true.  <u>Shook v. El Paso County (Shook I)</u>, 386 F.3d 963, 968 (10th

Cir. 2004) (citing J.B. v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)).

Plaintiff made no class allegations in any of his complaints.  Doc. 15 at 1, 3.

Accordingly, this court relies upon the following allegations set forth in the briefs

supporting this Plaintiff's Second Motion to Certify as a Class Action Suit, Docs.

15, 18-19, and the other allegations made in his complaints and the evidence that

the parties submitted.

After being injured in a car wreck with an uninsured driver on June 11,

2005, Plaintiff filed a claim for damages under his own insurance policy, a policy

that Defendant Safeco had issued to him.  Doc. 16, Ex. A at ¶ 4-6, 8-9.  Morgan

Petterson was the employee primarily responsible for handling Plaintiff's claim.

Defendant's Brief in Opposition to Plaintiff's Second Motion to Certify as Class

Action Suit, Doc. 16 at 1; Doc. 27, Ex. 2.  The insurance company's investigation

determined that the uninsured driver was at fault.  Doc. 15 at 1.  Plaintiff alleges

that his damages from the accident included personal injuries, medical bills, lost

wages, and emotional distress.  Doc. 15 at 1.

Plaintiff and Defendant Safeco exchanged multiple settlement offers, but

were unable to agree on how to resolve Plaintiff's claim.  Doc. 15 at 1.  A

disputed issue was the amount of lost wages Defendant Safeco should pay to the

Plaintiff.  Doc. 15 at 1.  Plaintiff contended that his coverage entitled him to

compensation based upon his gross wages.  Doc. 16, Ex. A at ¶ 9-11.  Defendants

claimed that the lost wage claim should be reduced by 20% to reflect taxes that

Plaintiff would have paid on his wages had he not been injured.  Doc. 15 at 1.
The difference between Plaintiff's gross wages and his reduced net wages
amounted to $1,151.12.  Doc. 15 at 1.

Because of this disagreement, Plaintiff filed this action in New Mexico
state district court on September 18, 2006.  Doc. 16, Ex. A.  He sought full
payment on his policy for his damages, including the gross amount of lost wages,
and alleged that Safeco had acted in bad faith in refusing to settle for this amount.
Doc. 16, Ex. A. ¶ 9-11, 14-18.  He further alleged that the denial of his lost wage
claim was part of a "pattern and practice of denying plaintiffs' [sic] or claimants
their gross wages when settling first party claims."  Doc. 16, Ex. A. ¶ 16.
Defendants denied this in their Answers.  Doc. 15 at 2.

Plaintiff claims that Defendants' representative, Sean Vizyak, admitted that
it was Safeco's custom and practice to withhold 20% for taxes from lost wage
claims in uninsured or underinsured cases filed by its insureds, unless doing so
would violate a state's clear guidelines requiring the payment of gross wages.
Doc. 15 at 2; Doc. 16, Ex. F at 13-14.  Mr. Vizyak stated that of the four states in
which he worked, California, Colorado, Oklahoma, and New Mexico, only
California required the payment of gross wages.  Doc. 15 at 2; Doc. 16, Ex. F at
14.  Mr. Vizyak's deposition occurred on October 7, 2008, more than two years
after Plaintiff first sued.  Doc. 15 at 2.

Discovery concluded on June 4, 2009, and the case was set for trial in state

-3-

court on July 13, 2009.  Doc. 16 at 2.  On June 11, 2009, one day after the pre-

trial conference, and four years to the day of Plaintiff's injury, Plaintiff moved to

certify a multi-state class of "any uninsured/underinsured motorists who have

filed uninsured/underinsured claims against defendant Safeco containing a claim

for lost wages from 1996 until the present whose claims have been settled as of

the date of the filing."  Doc. 1, Ex. B at 1-2; Doc. 16 at 2.  Plaintiff sought to be

the sole representative of this class.  Id.  His motion argued for certification under

New Mexico Rule of Civil Procedure 1-023.  Doc. 1, Ex. B at 1-3.  For the class,

he seeks compensatory damages, treble damages, and punitive damages.  Docs.

18-19 at 7.

On June 30, 2009, Defendant Safeco removed this case to federal court

under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2), 1453(b) (CAFA).

Doc. 1.  Defendants then opposed Plaintiff's state motion for class certification.

Doc. 2.  On September 11, 2009, Plaintiff moved a second time to certify as a

class action, now under Federal Rule of Civil Procedure 23.  Doc. 15.  Defendants

oppose this second motion as well.  Doc. 16.  Plaintiff served his first discovery

requests for information about the size and scope of a putative class shortly after

his second motion.  Doc. 16, Exs. H & I.  Plaintiff moves again for class

discovery.  Doc. 13; Doc. 18-19 at 1; Doc. 26-27.

## Discussion

Whether to grant or deny certification of a class requires an exercise of

discretion.  <u>Reed v. Bowen (Reed II)</u>, 849 F.2d 1307, 1309 (10th Cir. 1988).  "'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the requirements of Rule 23 are met.'"  <u>Anderson v. City of Albuquerque</u>, 690 F.2d 796, 799 (10th Cir. 1982) (quoting <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177 (1974)).  Plaintiff bears the "strict burden" of proving that this action qualifies for class certification.  <u>Rex v. Owens</u>, 585 F.2d 432, 435 (10th Cir. 1978).  Although this court should resolve uncertainties "in favor of and not against the maintenance of the class action," <u>Esplin v. Hirschi</u>, 402 F.2d 94, 99 (10th Cir. 1968), this court engages in its own "'rigorous analysis'" of whether the proposed action satisfies the requirements of Rule 23.  <u>Shook I</u>, 386 F.3d at 968 (quoting <u>Gen. Tel. Co. of the S.W. v. Falcon</u>, 457 U.S. 147, 161 (1982)) (additional citation omitted).

## I.  Class Certification-Threshold Requirements

This court begins with two issues preliminary to its analysis under Rule 23(a), specifically, whether Plaintiff showed (1) that a defined or identifiable class exists, and (2) that the class representative is a member of the class.

### A.     Class Definition and Representative Membership

Rule 23 requires that a class representative be a member of an existing class.  Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . .");  <u>e.g.</u>, <u>E. Tex.</u>

Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403-05 (1977); Paton v. N.M. Highlands Univ., 275 F.3d 1274, 1278-79 (10th Cir. 2002).  A court must ascertain a class's existence and its basic contours before it can certify a class. Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).").

Article III's grant of jurisdiction also requires every class representative to be a member of the proposed class.  "To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents."  Schlesinger v. Reservists Comm. To Stop the War, 418 U.S. 208, 216 (1974) (citations omitted); see also Rector v. City & County of Denver, 348 F.3d 935, 949 (2003); Milonas v. Williams, 691 F.2d 931, 937 (10th Cir. 1982); 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1759-61 (3d ed. 2009).

Although Rule 23 does not explicitly require a standing analysis, standing is jurisdictional.  As such, a court has the "'obligation to assure [itself]' of litigants' standing under Article III."  DaimlerChrsyler Corp. v. Cuno, 547 U.S. 332, 340 (2006) (citations omitted).  Each claim or form of relief requires standing, thus, Plaintiff must have standing to bring any class claims.  Id. at 352-53.  A court may *sua sponte* examine subject matter jurisdiction at any time.  See,

-6-

e.g., Adarand Constructors, Inc. v. Mineta, 534 U.S. 103, 110 (2001).

Plaintiff proposes the following class definition:

any claimants who have filed uninsured/underinsured motorist claims against defendant Safeco containing a claim for lost wages from July 1, 1996 until the present, whose claims have been settled as of the date of the filing of this motion or the resolution of this case, in those states or jurisdictions in which Safeco has a policy of withholding 20% from lost wage claims to reflect taxes that would have allegedly been paid on the wages.

Doc. 15 at 5. This proposal identifies an ascertainable group. Defendants do not challenge that Plaintiff is a member of the proposed class.

Although Plaintiff proposed the class definition, the court has serious doubts that Plaintiff is in fact a member of such a class. To be a member requires that Defendant Safeco settled the insured's claim. Doc. 15 at 5. Here, according to the Plaintiff's complaint, Plaintiff refused to settle unless he received gross wages, which Defendants allegedly refused to pay.[1] Doc. 16, Ex. A (Complaint) at 2-3; Doc. 15 at 1-2. By definition, the class settled for net wages, no doubt signing releases. Plaintiff's individual claims concern the failure of the parties to settle for net wages. Doc. 16, Ex. A at 1-3. A court has yet to resolve Plaintiff's case and it is not clear to what extent Safeco applied such a practice to him, let alone the extent of the practice's responsibility for lack of a settlement. It is

---

[1] Safeco disputes that it has such a blanket practice, instead claiming that it looks to state rulings on this issue for guidance; if there are none, Safeco tries to approximate net wages from pay stubs, and lacking that, applies a 20% reduction. See Doc. 16, Ex. F at 13-14.

certain that Plaintiff has not signed a release.  Even assuming that the Plaintiff could somehow redefine the class to encompass any insured who has filed an uninsured motorist claim and whom Safeco denied gross wages, other problems abound.

## II.   Class Certification: Rule 23(a) Prerequisites

Under Rule 23(a), this court must examine whether "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

### A.     Rule 23(a)(1):  Numerosity

Plaintiff alleges that class members exist in at least three states, New Mexico, Colorado, and Oklahoma, and identifies "almost 600 uninsured/underinsured motorist claims for a five year period in New Mexico," most of which he alleges involve claims for lost wages.  Doc. 15 at 5. Defendants stated in their notice of removal that the earliest definition of the putative class exceeds one hundred.  Doc.1 at 4.  This court finds this class to be sufficiently numerous as to render joinder impracticable.

### B.     Rule 23(a)(2):  Commonality

Plaintiff must provide a "specific presentation identifying the questions of

law or fact that were common." <u>Gen. Tel.</u>, 457 U.S. at 158.  Plaintiff alleges the

following common questions of fact:

> Each putative class member was involved in an auto accident
> with an uninsured or underinsured driver; . . . was insured under a
> policy issued by defendant Safeco that contained
> uninsured/underinsured motorist coverage; . . . filed a claim with
> Safeco for wages lost as a result of the auto accident; . . . lived in a
> state or jurisdiction in which Safeco had a policy of reducing lost
> wage claims by 20% to reflect taxes that would have allegedly been
> paid and . . . had 20% deducted from their lost wage claims at the
> time their claims were settled with defendant Safeco.

Doc. 15 at 5-6.  It is uncertain whether the contracts of other insureds contain the

same operative language as Plaintiff's insurance policy.

Plaintiff suggests that common questions of law exist in the class because

each member will assert first-party common law bad faith claims, statutory claims

based upon a model unfair claims act and the Uniform Deceptive Practices Act.

Doc. 15 at 6-7.  Plaintiff admits that these claims will pose conflicts of law and

case management issues, and that the statutes often will not permit a private cause

of action to enforce or assert the claims.  Doc. 15 at 7.  He acknowledges that

subclasses will be necessary because at least two different standards govern

common law bad faith.[2]  Doc. 15 at 7.  Plaintiff requests class discovery before

providing the court with a "truly detailed analysis of the common questions of

---

[2]  In his reply brief, Plaintiff suggests that because New Mexico has a
higher standard for bad faith than some other states, he will be advocating under
the higher standard which establishes typicality.  Doc. 18 & 19 at 3.

law, and the conflict of law and management problems that may arise." Doc. 15 at 6-7. Plaintiff recently filed another motion requesting pre-certification discovery, mainly arguing that Safeco is responsible for his delay in seeking certification, and also seeking discovery concerning the multi-jurisdictional nature of the claims and possible affirmative defenses including limitations, waiver and release.[3] Doc. 27 at 4-7.

"For a common question of law to exist, the putative class must share a discrete legal question of some kind." J.B., 186 F.3d at 1289. "Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." Milonas, 691 F.2d at 938. Alleging the "systematic violation of various laws [does not] automatically meet[] Rule 23(a)(2)." J.B., 186 F.3d at 1289. A court may deny a proposal if "plaintiffs merely attempt to broadly conflate a variety of claims to establish commonality via an allegation of 'systematic failures.'" J.B., 186 F.3d at 1289.

The court ultimately need not reach this issue because of the other grounds upon which this court denies relief. For purposes of the remainder of the motion, the court assumes, without deciding, that there are sufficient common issues of law or fact.

C.      Rule 23(a)(3):  Typicality

---

[3] The motion is in large part successive of earlier arguments made by Plaintiff. Docs. 26 & 27.

Plaintiff asserts that his "claim that defendant's policy of withholding 20% from lost wage claims in states where there are no clear guidelines concerning the gross wage/net wage issue is typical of those of the putative class."  Doc. 15 at 8.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of the class.  In other words, "the plaintiff must prove the existence of a class with similar claims." Taylor v. Safeway Stores, Inc., 524 F.2d 263, 271 n.8 (10th Cir. 1975).  "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988); Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1189 (10th Cir. 1975).  A strong disconnect between what Plaintiff must prove and what the class members must prove to succeed on their claims can reveal that plaintiff's claims are atypical.  See Gen Tel., 457 U.S. at 157-58.

"By definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23." Rector, 348 F.3d at 950.  "It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class."  Id. at 949-50.  As noted, Plaintiff does not appear to be a member of his proposed class and thus his claims are not typical of the class as a whole.  If Plaintiff could

somehow overcome this, his claims still would be dissimilar from most of the class.

If Plaintiff defined the class broadly to encompass himself, the class would be divided into at least two groups, those who settled and those who did not. Whereas some class members may have signed releases of claims as part of their settlements, Plaintiff has not.  Given the thirteen-year period of the proposed class (from 1996 until the present), it is highly likely that most members would have settled claims.  Each settlement and release involves factual questions and affirmative defenses bearing on whether they may be set aside (limitations, laches, and waiver).  Not having settled with Defendants, Plaintiff has no such potential bars and it does not take pre-certification discovery to find out that Plaintiff is not the correct party to represent the class given these major issues.  Plaintiff's case is not typical of the settling class members.

Plaintiff's individual claims for personal injury damages and other recovery under his insurance policy involve additional individual issues that the class may not share.  Nor is there any evidence of whether individual insurance policies are uniform, and if not, how seriously they vary.  No one disputes that a multi-state class implicates an unknown number of different state laws, whereas Plaintiff's claims only arise under New Mexico state law.  Plaintiff contends that basing his claims upon model legislation is sufficient to show a common legal theory.  Doc. 18-19 at 3.  Model legislation, without more, simply does not address whether

Plaintiff's New Mexican legal issues are typical of other states' residents' legal issues.  Plaintiff in fact concedes that other states may not have enacted the relevant model statutes and even those statutes often lack private causes of action. Doc. 15 at 7.  He volunteers that the common law claims have varying standards. Doc. 15 at 7.  In short, no evidence shows typicality among legal theories.

Plaintiff contends that his facts are typical of other cases, if not identical, because every class member allegedly lost 20% of recovery.  Doc. 18-19 at 3. However, the Plaintiff's best evidence suggests that Safeco did not deduct an automatic 20% for lost wages, but would consider pertinent state authority.  If none existed, it would consider actual taxes paid on prior compensation before applying a 20% figure.  Doc. 16, Ex. F at 14.  Later, if more information were presented, Safeco would consider that.  Id.

If claims within a class are atypical, then the court may cure this difficulty by authorizing subclasses.  Esplin, 402 F.2d at 101.  Still, a district court "does not bear the burden of constructing subclasses.  That burden is upon the [party seeking certification] and it is he who is required to submit proposals to the court."  U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 408 (1980).

Where there are multiple types of claims and damages, and the parties do not know the number and types of state laws potentially governing this action, the lack of typicality makes it not at all clear how to define subclasses such as to manage these diverse legal issues.  See Boughton v. Cotter Corp., 65 F.3d 823,

827 n.1 (10th Cir. 1995).  The burden to suggest subclasses falls on Plaintiff and
he acknowledges that he has not attempted to intervene potential subclass
representatives to cure this problem.  Doc. 15 at 7.

  D.  Rule 23(a)(4):  Fair and Adequate Representation

  Rule 23(a)(4) requires that the representative party must fairly and
adequately represent the interests of the class.  This requirement is perhaps the
most important of the criteria for class certification set forth in Rule 23(a) because
it protects the absent class members' rights to due process.  Hansberry v. Lee, 311
U.S. 32, 42-43 (1940).  Plaintiff fails this standard on several grounds.

  Plaintiff asserts that he and his counsel vigorously pursued Plaintiff's
individual claims and will do so for the class.  Doc. 15 at 8; Doc. 18-19 at 2.
Although brought up only in the reply brief, they assert no known conflicts of
interest with the class.  Doc. 18-19, Exs. A & B.  Here, and elsewhere in this
memorandum opinion and order, the court considers the arguments in the reply
brief.  Courts ordinarily bar consideration of issues presented for the first time in a
reply.  See Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000).  As an alternative
holding to such a bar, this court considers the arguments.

  1.  Class Membership

  A plaintiff cannot represent a class fairly and adequately if he has "an
evident lack of class membership."  E. Tex. Motor Freight Sys. Inc., 431 U.S. at
403-05.  In such a case, a plaintiff is not merely an inadequate or unfair

-14-

representative, he is no representative at all.  See Zinser v. Cont'l Grain Co., 660 F.2d 754, 761 n.11 (10th Cir. 1981).  As discussed above, it does not appear that Plaintiff is a class member under his own definition.

Usually, in cases when a class representative is a class member, "[r]esolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002).  Assuming arguendo that Plaintiff is a class member, he fails to meet this standard of adequate representation as well.

2.    Conflicts of Interest

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997).  Conflicts between the actual demands of the class outside of court and the demands for relief of the plaintiff in court may highlight such a conflict.  See E. Tex. Motor Freight Sys. Inc., 431 U.S. at 405.  Simultaneously, "it is not fatal if some members of the class might prefer not to have violations of their rights remedied."  Lanner v. Wimmer, 662 F.2d 1349, 1357 (10th Cir. 1981).  A disparity in the wishes of the class is one factor for the court to review in deciding whether an insuperable conflict of interest may exist.

I.      Formal Conflicts of Interest

Plaintiff asserts that he could handle the differences in state law governing different members' claims.  Even lacking pre-certification discovery, he has not identified <u>any</u> other class members or joined them to the suit.  When different state laws govern different claims, class members may have different interests in the direction of the litigation.  Plaintiff cannot ensure that he will adequately represent all these interests.

Plaintiff demands, among other things, that Defendant Safeco pay all lost wages reportedly owed under settled uninsured/underinsured motorist claims.  Plaintiff alleges that he refused to settle for net wages, believing himself entitled to gross wages.  However, by definition, the class settled for net wages, showing that the class had no insuperable objection to the reduction of their claims for taxes.  This may mean that the class felt the insurance policies or the law entitled them to no more; it may reflect the give and take of broader settlements of personal injury claims of which lost wages are a component.  According to Plaintiff, it means that the insurer acted in bad faith.  Such a characterization suggests other issues including issues about the breadth of any releases, the potential return of settlement proceeds, and the potential litigation of other insurance and personal injury issues.  This divergence suggests that the action needs subclasses to contain this conflict.  Plaintiff may not represent the whole class and he proposes no subclass alternative to this problem.

ii.     Personal Conflicts of Interest

A conflict between the representatives' and the class members' interests exists if the representatives place their personal interests ahead of the absent class members'.  Carpenter v. Boeing Co., 456 F.3d 1183, 1204 (10th Cir. 2006). Plaintiff seems to place his personal interests ahead of the class based upon his conduct of this litigation.

Despite knowing of the potential class claims against Defendant Safeco's alleged policy of paying net wages, Plaintiff did not raise those claims until the eve of trial.  This untimeliness militates against the quality of his representation in two ways.  First, this three-year delay revealed that Plaintiff valued the prosecution of his own suit more highly than the timely assertion of class claims. Second, this ambuscade, and indeed the entire proposal of a class action, suspiciously appears to be for Plaintiff's substantial benefit, so that he may settle his personal claims at a higher amount.  The court is completely unpersuaded by Plaintiff's repeated attempt to claim that Defendants' conduct is responsible for this delay.  Doc. 15 at 3-5; Doc. 18 at 10-1; Doc. 27 at 3-7.  This court will not ratify such win-at-all-cost gamesmanship by deeming it fair and adequate representation.

3.  Inadequacy Evidenced by Untimeliness

Untimeliness may reflect whether a representative will provide fair and adequate representation.  See E. Tex. Motor Freight Sys. Inc., 431 U.S. at 404-05

-17-

(considering the "failure to move for class certification prior to trial" a "strong indication[] that" named representatives would not "fairly and adequately represent the class"); <u>Trevizo v. Adams</u>, 455 F.3d 1155, 1161 n.4 (10th Cir. 2006).

Plaintiff argues that this court should generally excuse any delay in his motions because he claims he only learned of the possibility of a class at the late hour of Mr. Vizyak's deposition, when Mr. Vizyak allegedly substantiated Defendant Safeco's practice of paying only net wages. Doc. 15 at 3-5. However, in his very first complaint, the Plaintiff alleged that such a practice existed and sought individual relief. Doc. 16, Ex. A. Plaintiff asserts that because he did not violate Rule 23(c)(1)(A), which requires courts and not parties to timely address certification, he bears no responsibility for any delays. Doc. 18-19 at 10-11.

Plaintiff cannot blame his delay upon a desire to develop sufficient facts first. He could have asserted the existence of a class in his first complaint and, if he needed additional information, could then have requested class discovery before asking the court to certify a class. Plaintiff waited nine months from the date of the deposition to move for class certification. Doc. 15 at 2. He waited almost a year more to instigate any discovery into the size and scope of a putative class. Doc. 16, Exs. H & I. He waited until the completion of briefing on this motion to file another motion, Doc. 26, seeking pre-certification discovery, but where his evident goal was to supplement this motion. Such successive motions are unnecessary where he, as the movant, got the first and last word in this present

-18-

motion.  Docs. 15 & 18-19.  Plaintiff never filed any class complaints.  Plaintiff's
bare assertion that he now would prosecute the action vigorously rings hollow.
See Doc. 15 at 8.  Such inexcusable delay is not in the best interests of the class.
This court finds that such untimeliness disqualifies Plaintiff from being an
adequate representative.

4.     Incompetence of Class Counsel

A class representative may be inadequate when he is incompetent to conduct
litigation.  Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir.
2000) (upholding determination that pro se layman would be an inadequate
representative).  Under Rule 23(a), a plaintiff must prove that class counsel is
"qualified, experienced, and able to conduct litigation in the interests of the class."
Manual for Complex Litigation § 21.141 (4th ed. 2004).  This inquiry overlaps
with Rule 23(g).  Counsel would be an inadequate representative for several
reasons.

First, Plaintiff's counsel has no experience with class actions.  Doc. 16 at 5.
Counsel argues that his prior legal work nevertheless was complex.  Id.
Notwithstanding that, the "main focus of his practice is helping clients in legal
matters such as criminal defense, personal injury and family law."  Doc. 16, Ex. C
(Plaintiff's counsel's website).  Counsel has not sought to associate himself with a
lawyer experienced in class actions.  Rule 23 requires greater experience.
Completely apart from the merits, the court also questions whether Plaintiff's

counsel has adequate understanding of the tax law implications of the insurer's alleged policy; Plaintiff's expert report suggests that a personal injury settlement involving lost wages would be taxable by citing a revenue ruling dealing with a libel suit and the allocation of amounts between punitive and compensatory damages.[4]

Second, counsel shares many of Plaintiff's inadequacies as a representative, because his representation imputes Plaintiff's positions to him.  Because of the conflicts of interest and untimeliness, Plaintiff's counsel will not suffice to represent the entire class.  Plaintiff could avoid some conflicts of interest if Plaintiff's counsel only represented Plaintiff as a subclass representative, but the court's other concerns about Plaintiff and his counsel nevertheless disqualify him as subclass counsel.

Third, counsel's conduct of this litigation disqualifies him.  This court has

---

[4]  Doc. 18-19, Ex. C at 2 (citing Rev. Rule. 85-98, 1985-2 C.B. 51); see Rev. Rul. 85-97, 1985-2 C.B. 50 (damages received for personal injury including amounts allocated to lost wages are excludible under I.R.C. § 104(a)(2) and Treas. Reg. § 1-104-1(c)); Robert P. Wood, Tax Aspects of Settlements and Judgments, Tax Mgt. Portfolio (BNA) No. 522 at A-12 (2006) (noting that while amounts received for back pay might logically be treated as income, in the physical injury context "the entire amount may be excludible under § 104, even if the recovery includes wages that otherwise would have been taxable"); see also John E. Theuman, Propriety of Taking Income Tax Into Consideration In Fixing Damages In Personal Injury or Death Action, § 2(a), 16 A.L.R. 4th 589 (1982 & 2009) (noting widely differing state law treatment on whether a trier of fact may consider the absence of tax on personal injury damages).  The point of this is not to decide the definitive tax treatment, but to suggest that *some* investigation of the merits of the claim ought to occur.

serious reservations about counsel's definition of the class and his attempt to shift the blame for the delay in this case upon the insurer.  In his reply brief, counsel asserts that because Defendants' response brief did not allege in detail all of their defenses to all of Plaintiff's amorphous and unidentified class claims, Defendants waived all of their affirmative defenses.  Doc. 18-19 at 6.  This comes from a Plaintiff who never pled class allegations in any of his complaints.  Defendants cannot possibly be on notice of the nature of the claims asserted against them. Expecting them to plead their defenses in specificity is unreasonable.  Such an underhanded strategy is an unworthy trick.

Any experienced class counsel would have moved to certify a class near the start of litigation, not three years later and on the eve of trial.[5]  Defendants allege that the three-year delay causes them prejudice.  As they accurately note, "[c]lass certification is not to be used as an ambush tactic on the eve of trial."  Doc. 16 at 12.  All defendants have a right to know their litigation adversaries within a reasonable time.  Besides surprising Defendants, this last-minute motion upset the

---

[5]  This motion is very late in the coming and that delay reflects upon counsel.  This case does not involve a federal district judge, or even a state judge, delaying the certification of a class presented to it in an initial complaint or in a timely motion, and of course such judicial delay is contrary to the commands of Rule 23(c)(1)(A).  Rather, in this case, it is solely the Plaintiff's tardiness which caused certification to be first considered so late in state court.  To be clear, such untimeliness goes solely to the adequacy of Plaintiff and his counsel as a class representative.  The Tenth Circuit in <u>Trevizo</u> held that Rule 23(c)(1)(A) did not create "an independent basis for denying a party's motion."  455 F.3d at 1161. Instead the court must "take up class action status" in a timely manner.  <u>Id.</u>

state court's process in the case.  Upon the case's removal to federal court, the case required duplicate efforts and expenses from the parties and from the courts. An adequate representative needs to be able to conduct litigation on time, not to mention professionally and fairly.

Fourth, Defendants make several serious charges about the competency of the proposed class counsel.  "Plaintiff's litigation tactics, including his continued efforts to settle his individual claim and his perfunctory class certification briefing, suggest he has asserted class allegations as leverage for his individual claims rather than in the interests of the putative class."  Doc. 16 at 11-12. "Plaintiff continued to make individual settlement demands while making no effort to settle claims on behalf of the putative class.  On June 5, 2009, six days before moving for class certification, Plaintiff demanded $6.3 million to settle his individual claim."  Doc. 16 at 16-17.  The parties reached no settlement.  As the trial date approached, Plaintiff moved for certification.  Then, on "June 17, 2009, . . . Plaintiff made an individual demand of $5 million.  In contrast, Plaintiff has made no demands on behalf of the class."  Doc. 16 at 16-17.  Counsel "makes no attempt to refute the obvious conflicts created by his efforts to sellout the proposed class in pursuit of an individual settlement."  Doc. 16 at 5.  Defendants continue:

> Plaintiff's half-hearted efforts to certify the class indicate that he is not adequately representing the class.  The class briefing has been perfunctory.  Plaintiff has submitted no evidence whatsoever in

support of his motions.  He has made no effort to analyze or reconcile the various conflicting state laws that he concedes this Court would be required to apply.  His motions fail not only to carry his legal burden, but they fail even to identify the applicable legal standards.  Indeed, Plaintiff's current Motion repeatedly invokes the New Mexico class-certification rule to support his bid for certification in federal court, in direct contravention of Rule 81(c).

Doc. 16 at 17.

For all these concerns, many of which are independently problematic, this court denies class certification.  Neither Plaintiff, nor the counsel representing him, would be a constitutionally adequate representative of the class.

## III.   Class Discovery

Plaintiff argues that the court should allow him discovery before it rules on this motion.  Although he generally alleges class discovery would enable him to merit certification, Plaintiff particularly wants discovery as to the geographic scope of the class.  See Doc. 16, Exs. H & I.

Precertification discovery is permissible as needed.  See 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1785.3 (3d ed. 2009).  Discovery is not necessary when the information needed to deny certification is apparent from the record.  See Rossin v. Southern Union Gas Co., 472 F.2d 707, 712 (10th Cir. 1973).  To merit class discovery before certification, a plaintiff must do more than plead a class action and argue in a brief "that discovery and an evidentiary hearing should be held before the trial court could determine the maintainability of the action as a class action."  Id. at 712.  A

-23-

plaintiff must put forward evidence of a "showing of substance or need" other than that his litigation adversary has much greater information.  Id. at 712.  This court has exhaustively reviewed the documents in this case.  Under each alternative ground of decision, class discovery would not change the outcome nor be of use to the court in resolving the motion.

Plaintiff is aware of the facts of his situation.  Nothing suggests how discovery will remedy his lack of inclusion in the class he proposes.  It is far from obvious how, given the tools of class discovery, Plaintiff could prosecute his individual claims and be a member of a class asserting the improper settlement of those claims.

Plaintiff asserts that with class discovery he could lend additional support to his motion for class certification.  Because a defect in the motion is the absence of a viable representative, Plaintiff implies that he could use discovery to identify a suitable representative.  But no counsel "has a *right* to use the power of the courts, through the Rules of Civil Procedure, to find a client who could be intervened as a plaintiff in a suit which has no party plaintiff."  Reed II, 849 F.2d at 1313-14.  This court notes "the long period of time within which counsel for the named plaintiff[] could have located a party with an appropriate claim, who was willing to become a plaintiff in this suit" and "the warning counsel had of the desirability of intervention" through a challenge to the adequacy of Plaintiff's representation.  Reed II, 849 F.2d at 1314.  Without a seemingly viable plaintiff, this court will not

allow class discovery.  Should it do so, the court would create the potential for discovery decisions or abuse prejudicial to the privacy interests of the class.  See Jeff Kosseff, Note, The Elusive Value: Protecting Privacy During Class Action Discovery, 97 Geo. L.J. 289, 296-97 (2008).

Discovery would have no bearing upon the adequacy of the Plaintiff's representation of the claims and nor can it remedy the tardy assertion of class claims.  The record before this court includes the state and federal procedural histories of this case, including the undisputed dates of every filing.  The motions for class certification, coming almost three years after the initial complaint and on the eve of trial, speak for themselves.  Despite its ability to seek and find facts from the past, discovery is not a time machine.  It cannot correct Plaintiff's litigation tactics and failure to move for class certification in a timely manner.

Without any showing of necessity for class discovery, Rule 23(c)(1)(A)'s injunction requires this court to decide class certification "as soon as practicable."  Because of this court's determination that Plaintiff failed to prove the requirements of Rule 23(a), this court will not certify the proposed class.  This court declines to consider the appointment of class counsel under Rule 23(g) and need not consider the merits of certification under any other part of Rule 23.  Nor will this court conduct a hearing on class certification.  Because the magistrate judge already conducted a Rule 16 conference, the court will deny Plaintiff's Motion for a Pretrial Conference (Doc. 24) as moot.  The court will also deny the

motion for pre-certification class discovery (Doc. 26), as the court has considered the arguments.  In the future, parties should direct their attention solely to Plaintiff's individual claims.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that:

(1) Plaintiff's Second Motion to Certify as a Class Action filed September 11, 2009 (Doc. 15) is denied.

(2) Plaintiff's Motion for a Pretrial Conference filed October 8, 2009 (Doc. 17), is denied, and,

(3) Motion for Pre-Certification Discovery filed December 4, 2009 (Doc. 26) is denied.

DATED this 11th day of December 2009, at Santa Fe, New Mexico.

_Paul Kelly Jr._____
United States Circuit Judge
Sitting by Designation

Counsel:
Houston Ross, Albuquerque, New Mexico, for Plaintiff.

Robert A. Corchine and Steven J. Leibel, Dines & Gross, PC, Albuquerque, New Mexico, Russell R. Yager, Brian E. Robison and Manuel G. Berrelez, Vinson & Elkins L.L.P., Dallas, Texas, and David P. Blanke and Jennifer B. Poppe, Vinson & Elkins L.L.P., Austin, Texas, for Defendants.