IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID HAUFF,

      Plaintiff,

vs.                                                          No. 1:09-cv-00639 PJK-DJS

MORGAN PETTERSON and
SAFECO INSURANCE COMPANY
OF AMERICA,

      Defendants.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant Safeco Insurance Company of America's Motion for Partial Summary Judgment, filed May 26, 2010 (Doc. 45) and Defendant Morgan Petterson's Motion for Summary Judgment, filed May 28, 2010 (Doc. 47). Plaintiff David Hauff sought payment from Safeco under an insurance policy. After the parties did not settle, Mr. Hauff brought various bad faith claims against Safeco and its adjuster, Ms. Petterson. The Defendants' motions are well-taken and should be granted.

Background

I.    **Factual Background**

This background is drawn from Safeco's "statement of material facts that

are beyond genuine dispute," supplemented by Mr. Hauff's Memoranda in Opposition, while omitting extraneous detail, party arguments, and facts not supported by the record.  Doc. 45 at 3-8; Docs. 51-52 (Plaintiff's Memoranda in Opposition); see also Docs. 65-66 (Defendants' Reply Briefs).  "All material facts set forth in the statement of the movant [are] admitted unless specifically controverted."  D.N.M.L.R.-Civ. 56.1(b).  Under Federal Rule of Civil Procedure 56, the following undisputed facts are stated as favorably to Mr. Hauff as the record permits.

An uninsured driver injured Mr. Hauff in June 2005.  Doc. 16, Ex. A at ¶¶ 5-7.  He filed a claim for damages under his own uninsured motorist insurance policy from Safeco.  Id. at ¶¶ 4, 9.  Mr. Hauff's counsel, Houston Ross, represented him as he negotiated with Safeco to settle this claim.  Doc. 45, Ex. B at ¶ 3 & Ex. 1 at 1.  Ms. Petterson was the Safeco adjuster responsible for Mr. Hauff's claim.  Doc. 45, Ex. B at ¶ 2.  Both Ms. Petterson and Mr. Ross "agreed and negotiated based on the fact that the plaintiff made an essentially full recovery in three months."  Doc. 51 at 8.  Mr. Ross and Ms. Petterson's written communications reveal the following.  Doc. 45, Ex. B at ¶¶ 3-4 & Ex. 1.

Ms. Petterson first received a settlement demand from Mr. Ross on October 11, 2005.  Doc. 45, Ex. 1 at 5-9; see Doc. 45 at 3 & n.2.  That demand sought the policy limits of $75,000 and listed three elements of damages: medical bills, lost wages, and general damages.  Doc. 45, Ex. 1 at 5-6.  It included a demand that

-2-

Safeco pay Mr. Hauff's gross, pre-tax wages of $5,755.59 for the twenty-seven days that he did not work.  Id.  Ms. Petterson was in contact with Mr. Ross before the demand and acknowledged the demand on November 1, 2005.  Id. at 1-4, 11.

On December 7, 2005, fifty-seven days after receiving Mr. Hauff's initial demand and fifteen days after resolving with Mr. Ross the total of Mr. Hauff's medical bills, Ms. Petterson offered to settle Mr. Hauff's claim for $18,434.19.  Doc. 45 at 4 & Ex. 1 at 16.  The next day, Ms. Petterson increased the initial offer by $500 for Mr. Hauff's general damages, for a total of $18,934.19.  Doc. 45, Ex. 1 at 20.  Ms. Petterson wrote that the offer was "negotiable."  Id.

Ms. Petterson had followed Safeco's practice of offering to pay an estimate of after-tax, "net" wages.  Doc. 45 at 5.  Ms. Petterson estimated Mr. Hauff's marginal rate at twenty percent and offered him $4,604.47, which was eighty percent of Mr. Hauff's pre-tax, gross wages.  Doc. 45, Ex. 1 at 16; Ex. 2 at 14.

The parties' initial settlement position differed by $56,065.81, as follows:

| Category | Mr. Hauff | Safeco | Difference |
|---|---|---|---|
| Medical Bills | $12,816.47 | $12,829.72 | ($13.25) |
| Lost Wages | $5,755.59 | $4,604.47 | $1,151.12 |
| General Damages | $56,427.94 | $6,500.00 | $49,927.94 |
| Less MedPay Benefits | $0.00 | ($5,000.00) | $5,000.00 |
| **Total** | **$75,000.00** | **$18,934.19** | **$56,065.81** |

Doc. 45 at 3-4.

From December 8, 2005, through February 17, 2006, the parties exchanged seventeen demands and offers.  Id. at 4; Doc. 45, Ex. 1; see also Doc. 45, Ex. C. The longest period between offers was eighteen days (between Mr. Hauff's demand of $59,350 on January 23, 2006 and Safeco's counteroffer of $20,950 on February 10, 2006).  Doc. 45 at 4.  This eighteen-day period resulted from Ms. Petterson's decision to re-review "the entire package of medical records" and "round-table" with other adjusters to determine the reason for the difference in the parties' valuations.  Doc. 45, Ex. 1 at 33.

Mr. Hauff's initial demand of $75,000 valued his general damages for pain and suffering, injuries, and emotional distress at $60,000, roughly 4.5 times his medical bills.  Id. at 5-6.  Mr. Hauff later reduced his demand for general damages by 28.6% to $40,295.  Doc. 45 at 5; Doc. 45, Ex. 1 at 40.

Ms. Petterson's initial counter-offer of $18,934.19 valued Mr. Hauff's general damages at $6,500, roughly one-half of his medical bills.  Doc. 45 at 5. Ms. Petterson increased Safeco's offer for general damages by 44.2% to $9,376 in its final offer of $21,810 on February 17, 2006.  Id.  Ms. Petterson explained her valuation on January 20, 2006: "Please understand that most of your client's symptoms resolved in a month['s] time and his elbow pain has resolved in 3 months time."  Id. at 6; Doc. 45, Ex. 1 at 29.

Ms. Petterson thought that mediation was the "best option" to resolve the dispute and repeatedly requested that Mr. Ross consent to mediation.  Doc. 45 at

4.  After five weeks, Mr. Ross agreed to mediate the dispute "only [i]f Safeco agree[d] to pay the entire costs" of the mediation.  Id.; Doc. 45, Ex. 1 at 37. Safeco would agree to pay for mediation only if the mediation was successful. Doc. 45, Ex. 1 at 37.

Mr. Ross also refused to arbitrate the dispute under the non-binding arbitration option of the insurance policy.  Doc. 45, Ex. 1 at 27.  Instead, he proposed binding arbitration.  Id. at 34; Doc. 51 at 3.  Safeco rejected binding arbitration.  Doc. 45, Ex. 1 at 34-35.  Mr. Ross then broke off settlement discussions on February 23, 2006.  Id. at 49.

The parties' final positions differed as follows:

| Category | Mr. Hauff | Safeco | Difference |
|---|---|---|---|
| Medical Bills | $12,829.72 | $12,829.72 | $0.00 |
| Lost Wages | $5,755.59 | $4,604.47 | $1,151.12 |
| General Damages | $40,294.69 | $9,375.81 | $30,918.88 |
| Less MedPay Benefits | ($5,000.00) | ($5,000.00) | $0.00 |
| Total | $53,880.00 | $21,810.00 | $32,070.00 |

Doc. 45 at 6.

## II.   Procedural History

Mr. Hauff filed this action in state court on September 18, 2006.  Doc. 16, Ex. A.  He sought payment under his policy for his damages, including the gross amount of his lost wages.  Id. at ¶¶ 9-11, 14-18.  He also alleged that Safeco acted

in bad faith and violated its statutory duties in refusing to settle for the amount he demanded.  Id.  On June 11, 2009, Mr. Hauff moved to certify a multi-state class of uninsured or under-insured motorists who filed lost-wage claims against Safeco.  Doc. 1, Ex. B at 1-2.

On June 30, 2009, Safeco removed this case to federal court under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2), 1453(b) (CAFA).  Doc. 1.  On October 29, 2009, this court denied Mr. Hauff's motion to remand the case to state court.  Doc. 23 at 2.  This court held that it had jurisdiction over this case under 28 U.S.C. § 1332(a)(1) & (d)(2).  Id.

On September 11, 2009, Mr. Hauff moved for class certification under Federal Rule of Civil Procedure 23.  Doc. 15.  On December 11, 2009, this court denied class certification.  Hauff v. Petterson, No. 1:09-cv-00639 PJK-DJS, 2009 WL 4782732 (D.N.M. Dec. 11, 2009) (Doc. 28).  After additional discovery on Mr. Hauff's individual claims, the instant summary judgment motions were filed.

## Discussion

Safeco moves for summary judgment on whether it violated its common-law duty of good faith, the New Mexico Insurance Code, or the New Mexico Unfair Practices Act when it (1) negotiated to settle Mr. Hauff's claim, (2) offered to pay after-tax wages, and (3) valued Mr. Hauff's general damages.  Doc. 45 at 1.  Safeco also seeks summary judgment on whether its conduct justifies

punitive damages.  Id.  Ms. Petterson seeks summary judgment on all claims
against her, that is, whether her actions violated the Insurance Code, the Unfair
Practices Act, or any contractual or common-law duty.  Doc. 47 at 1-2.  At trial,
Mr. Hauff would bear the burden of proof on these issues.

## I.     Standard of Review for Summary Judgment

Summary judgment eliminates factually unsupported claims and defenses.
Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment is
appropriate "if the pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any material fact and that
the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).
The court views "'the evidence and draw[s] reasonable inferences therefrom in
the light most favorable to the nonmoving party.'"  Koch Indus., Inc. v. United
States, 603 F.3d 816, 820-21 (10th Cir. 2010) (citation omitted).  At the same
time, the court cannot decide any issues of credibility.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 255 (1986).

The movant bears the initial burden of demonstrating the absence of a
genuine issue of material fact and entitlement to judgment as a matter of law.
Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).  If
this burden is met, the non-movant cannot "rest on the pleadings . . . but must set
forth specific facts by reference to affidavits, deposition transcripts, or other
exhibits to support the claim."  Serna v. Colo. Dep't of Corr., 455 F.3d 1146,

1151 (10th Cir. 2006) (citation omitted).   "Unsubstantiated allegations carry no probative weight."  Id.  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that "a reasonable jury could return a verdict" in the non-movant's favor.  Anderson, 477 U.S. at 248.

Mr. Hauff argues that the state court's earlier summary judgment decisions are "law of the case."  Doc. 51 at 9 n.1.  To the contrary, its decisions are interlocutory and the court is free to consider additional, properly filed summary judgment motions after removal to federal court.  Been v. O.K. Indus., Inc., 495 F.3d 1217, 1225 (10th Cir. 2007); Knudsen v. Liberty Mut. Ins. Co., 435 F.3d 755, 758 (7th Cir. 2006) ("The Class Action Fairness Act provides for federal resolution of the plaintiffs' claims, so the district court need not (and should not) give any weight to the state judge's order[s.]  These and all other questions are open to independent resolution in the federal forum.").

## II.    The Common Law Duty of Good Faith

The court first examines whether Safeco is entitled to summary judgment on Mr. Hauff's theory that it violated its common law duty of good faith when it offered to pay pre-tax wages, valued Mr. Hauff's general damages, and negotiated to settle the claim.

"The obligation to deal fairly and honestly rests equally upon the insurer and the insured."  Modisette v. Found. Reserve Ins. Co., 427 P.2d 21, 25 (1967) (citations omitted); see also New Mexico Uniform Jury Instructions-Civil §13-

1710.  To survive summary judgment on this claim, Mr. Hauff must cite evidence tending to show that Safeco's actions were based on a "dishonest judgment" and that it "failed to honestly and fairly balance its own interests" with Mr. Hauff's. Sloan v. State Farm Mut. Auto. Ins. Co., 85 P.3d 230, 237 (N.M. 2004); see generally New Mexico Uniform Jury Instructions-Civil §§ 13-1701 to 13-1718.

An insurer acts in bad faith when "its reasons for denying or delaying payment of the claim are frivolous or unfounded."  Sloan, 85 P.3d at 236; see also New Mexico Uniform Jury Instructions-Civil §13-1702.  A "frivolous or unfounded" refusal to pay is an "an arbitrary or baseless refusal," a refusal recklessly lacking any arguable support in the insurance policy or facts of the case.  Sloan, 85 P.3d at 236-37 (citations omitted).  Liability thus cannot rest on a merely "erroneous" or "incorrect" refusal.  Id. (citation omitted).  Where the insurer had a legitimate reason to question the amount of damages claimed by the insured, a finding of bad faith is improper.  United Nuclear Corp. v. Allendale Mut. Ins. Co., 709 P.2d 649, 654 (N.M. 1985); see also New Mexico Uniform Jury Instructions-Civil §13-1702.

### A.    Mr. Hauff's Lost Wages

Lost wages recovered due to personal, physical injuries are not taxable. Gross income does not include "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness."

-9-

I.R.C. § 104(a)(2).  "[T]he recovery for lost wages is also excludable [from gross income] as being 'on account of personal injuries,' so long as the lost wages resulted from time in which the taxpayer was out of work as a result of her injuries."  Comm'r v. Schleier, 515 U.S. 323, 329-330 (1995) (citation omitted). Section 104 also excludes a personal injury "settlement amount, including the amount allocable to the claim for lost wages."  Rev. Rul. 85-97, 1985-2 C.B. 50. The New Mexico Tax Code incorporates the federal calculations of gross income. N.M. Stat. Ann. § 7-2-2.  Thus, Safeco's lost-wage payment to Mr. Hauff would not be subject to income taxes, whether Safeco pays a net or gross amount.

Mr. Hauff previously argued that it would constitute bad faith for Safeco to pay after-tax wages because he would ultimately be taxed again on that reduced amount.  Doc. 51 at 14; Doc. 45, Ex. G at 92:25-93:16 (Hauff Dep.).  However, he apparently has abandoned that position.

Mr. Hauff instead argues that the law requires Safeco to pay him gross wages.  Doc. 51 at 10-14.  He argues that the difference between his gross and net wages is a tax-free windfall that he should receive.  Id. (citing Norfolk & W. Ry. Co. v. Liepelt, 444 U.S. 490, 498-99 (1980) (Blackmun, J., dissenting)).  But Mr. Hauff does not point this court to any New Mexico statute, case, or rule that states that a New Mexico insurer is obliged to pay pre-tax wages to settle this type of claim.  As such, whether Safeco must pay gross or net wages is an open question.

Safeco argues that it has no legal duty to pay gross wages.  Doc. 45 at 10-

16.  It argues that the "fundamental tenet" of insurance is to "provide funds to offset a loss either wholly or partly."  Id. at 11 (citing 1 Eric Mills Holmes & Mark S. Rhodes, Appleman on Insurance § 3.1 at 332 (2d ed. 1996)).  It is generally against the public interest for an insurance contract to confer a benefit greater in value than the loss suffered.  Id. at 11-12 (citing 1 Appleman on Insurance, supra § 3.1 at 332).  Safeco contends that while it should make Mr. Hauff whole, it need not provide him a tax-free windfall.  Id. at 11-12, 20 (citing, inter alia, Ruff v. Weintraub, 519 A.2d 1384, 1387 (N.J. 1987) ("[I]f the plaintiff is allowed to recover her gross wages, she will be receiving more than she would have had she continued work.").

To resolve this bad-faith claim, the court need not take a position on this question.  Safeco's legal arguments in favor of its position, combined with the lack of state authority on this situation, show that it was not arbitrary or baseless for Safeco to think that it had no duty to pay gross wages.  Because Safeco had a reasonable basis to decline to pay Mr. Hauff gross wages, its offers deducting twenty percent for taxes were not made in bad faith.  See Sloan, 85 P.3d at 236-37; Jackson Nat'l Life Ins. Co. v. Receconi, 827 P.2d 118, 135 (N.M. 1992) (holding that an insurer's refusal to pay was "neither frivolous nor unfounded" where insurer's position was "reasonable — albeit erroneous").

Mr. Hauff also argues that Safeco was obligated to give his interests the same consideration or greater as Safeco's own interests, which he claims Safeco

did not do when it allocated the difference between gross and net wages for itself. Doc. 51 at 13. He argues that "there is no way Safeco could have honestly and fairly balanced its own interests with his and conclude it should not pay him his gross wages." Id. at 14. But because Safeco could reasonably conclude that it had no legal obligation in New Mexico to pay Mr. Hauff gross wages, it did not act in bad faith.

### B. Safeco's Valuation of Mr. Hauff's General Damages

Mr. Hauff relatedly argues that Safeco violated the "equal consideration doctrine" when it valued his general damages. Doc. 51 at 15-16, 21. Safeco's offers were unreasonably low, he asserts, because Ms. Petterson ignored the nature and extent of his injuries. Id. Mr. Hauff also argues that Ms. Petterson should have made a "stacking" determination. Id. at 16.

The record shows that Ms. Petterson considered all the evidence Mr. Hauff submitted about his injuries and general damages, even though she did not break down her offer by specific injury. Doc. 45, Ex. 1 at 29, 33; Ex. 2 at 13-14. Both Ms. Petterson and Mr. Ross "agreed and negotiated based on the fact that the plaintiff made an essentially full recovery in three months." Doc. 51 at 8. In particular, Mr. Ross repeatedly advised Ms. Petterson that as a separate element of general damages he sought recovery for the injuries described in the medical records, including "C-4-5, C-5-6 aggravations" and elbow/radial injuries." Doc. 45, Ex. 1 at 21. Ms. Petterson reviewed and re-reviewed "the entire package of

medical records" and "round-tabled" with other adjusters to value the claim.  Id. at 33.  That Ms. Petterson could not remember her precise methodology, years later in her deposition, Doc. 51 at 2, or did not phrase it as a jury instruction might ("nature, extent and duration of the injury"), id. at 21, does not prove that she did not fully consider Mr. Hauff's medical evidence in her general damages offer.  The court will not consider Mr. Hauff's stacking claim because he does not provide argument or evidence to support it.

Mr. Hauff does not otherwise explain why Ms. Petterson's assessment was unreasonably low.  Ms. Petterson considered Mr. Hauff's injuries to be moderate and she made her general damages estimates accordingly.  Doc. 45, Ex. 1 at 29, 33; Ex. 2 at 13-14.  That Mr. Hauff found the offer to be low, in itself, does not make Ms. Petterson's offer unreasonable or the product of bad faith.  Cf. Roberts v. State Farm Mut. Auto. Ins. Co., 61 F. App'x 589, 590, 592-93 (10th Cir. 2003) (finding no Oklahoma duty of good faith breached when insurer offered insured a settlement amount with a lower ratio of non-economic damages to economic damages than Safeco offered in this case).  Nothing suggests that the amount was a product of bad faith.  See United Nuclear Corp., 709 P.2d at 654 (refusing to find bad faith where an insurer has a legitimate issue over the amount of damages claimed).  The court expresses no opinion on the actual amount of general damages owed under the policy.

C.     Safeco's Efforts to Settle Mr. Hauff's Claim

Next, Mr. Hauff argues that Safeco violated its duty of good faith and the "equal consideration doctrine" when it failed to make a timely settlement offer. Doc. 51 at 15.  This argument, too, lacks support.

Before and after receiving the initial settlement demand, Ms. Petterson was in contact with Mr. Ross.  Doc. 45, Ex. 1 at 1-11.  She made an initial settlement offer fifteen days after resolving the total of Mr. Hauff's medical bills.  Id. at 16. Later, the longest period between offers was eighteen days.  Doc. 45 at 4.  And this eighteen-day period resulted from Ms. Petterson's decision to re-review Mr. Hauff's records with other adjusters.  Id. at 4 & n.4; Doc. 45, Ex. 1 at 33.

Ms. Petterson's offers were reasonably timely.  Cf. Reeder v. Am. Econ. Ins. Co., 88 F.3d 892, 896 (10th Cir. 1996) (holding under Oklahoma law that an insurer taking just over three months to evaluate a claim and tender a settlement offer was "timely as a matter of law" and "certainly not in bad faith").  No reasonable trier of fact could conclude otherwise.

## III.   The New Mexico Unfair Insurance Practices Act

Mr. Hauff also claims that Safeco's conduct violated the Trade Practices and Frauds Act of the Insurance Code, N.M. Stat. Ann. § 59A-16-20.  Doc. 51 at 18-19.  The Act prohibits unfair or deceptive insurance acts.  N.M. Stat. Ann. § 59A-16-20.  An insurer violates the Act when it does not attempt "in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear."  Id. § 59A-16-20(E).  The Act does not

-14-

"require insurers to settle cases they reasonably believe to be without merit or overvalued." Hovet v. Allstate Ins. Co., 89 P.3d 69, 78 (N.M. 2004). "Any insurer that objectively exercises good faith and fairly attempts to settle its cases on a reasonable basis and in a timely manner need not fear liability." Id.

Mr. Hauff asserts that Safeco violated the Act by: (1) failing to acknowledge and act reasonably promptly upon communications; (2) failing to adopt and implement reasonable standards for the prompt investigation and processing of his claim; (3) not attempting in good faith to effectuate a prompt, fair, and equitable settlement of his claim, where liability was reasonably clear; (4) making offers unreasonably lower than similar plaintiffs recover, thus compelling him to litigate; and (5) offering less than what a reasonable person would have believed he was entitled to based on the written policy application. Doc. 51 at 18-19 (citing N.M. Stat. Ann. § 59-A-16-20).

First, as discussed above, there is no evidence that Safeco's offer was untimely. Any delays or gaps in communications were reasonable. See Reeder, 88 F.3d at 896 (refusing to find bad faith where insurer tendered a settlement offer over three months after liability was established).

Second, Mr. Hauff has not provided any evidence showing Safeco's existing standards for investigation and processing. It is not enough to assert that Safeco failed to act reasonably in this case. Mr. Hauff must identify Safeco's standards and show how they were inadequate.

Nor is it enough for Mr. Hauff to rely on the testimony of Garth Allen, a self-described expert in this area, for his description of the industry standards that Safeco allegedly failed to meet. See Doc. 51 at 15-16, 18, 21-22; see also Doc. 51, Ex. 2 (Allen Dep.). "[T]he mere expression of an opinion without [factual] support is insufficient to raise a triable issue of material fact." 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure:Evidence § 6293 (2010) (note omitted). Mr. Allen's deposition testimony cites no facts, studies, or data compilations to support his opinion; he admits that he has not personally reviewed New Mexico insurance practices. E.g., Doc. 51, Ex. 2; Ex. 3, 56-58. As such, this court disregards his opinions as unsupported argument. See City of Hobbs v. Hartford Fire Ins. Co., 162 F.3d 576, 586-87 (10th Cir. 1998) (affirming the exclusion of an expert that "lacked specialized knowledge about handling of bad faith cases in New Mexico involving third party insurance disputes").

Third, no law clearly requires Safeco to offer net wages instead of gross wages. Safeco's offers thus cannot support liability for bad faith violations.

Fourth, Mr. Hauff provides no proof that unreasonably low settlement offers compelled him to litigate. Cf. Doc. 1, Ex. A at ¶ 15. Ms. Petterson made a series of negotiable offers to settle and expressed her willingness to compromise. She repeatedly suggested mediation and non-binding arbitration. It was Mr. Hauff who broke off negotiations and refused to consent to Safeco's alternate dispute resolution options. No reasonable jury therefore could conclude that

Safeco forced Mr. Hauff to file this action.

Nor has Mr. Hauff submitted any probative evidence that Safeco offered him substantially less than similar plaintiffs recover.  Mr. Allen's opinion that Safeco's offer was too low is again inadequate.  Instead of supporting his conclusions with reasoned quantitative or qualitative data (for example, statistical analyses of prior judgments or similar settlements in New Mexico), Mr. Allen cites nothing except nation-wide generalities and assurances of his experience.  Doc. 51, Ex. 2 at 127, 147-49, 161, 169-71, 178-79, 187; Ex. 3 at 56-58.  "Though a proffered expert possesses knowledge as to a general field, the expert who lacks specific knowledge does not necessarily assist the [fact-finder]."  City of Hobbs, 162 F.3d at 587.  Without knowledge specific to this type of New Mexico claim, Mr. Allen cannot show the court why Safeco's offers were so unreasonably low as to be the product of bad faith.

Fifth, Mr. Hauff submits no evidence showing the compensation to which a reasonable person would have believed he was entitled based on the written policy application.  Cf. N.M. Stat. Ann. §§ 59A-16-4(A), 59A-16-20(H).  Mr. Hauff has not cited this court to any relevant application documents.

As such, summary judgment is appropriate on these claims.

IV.   **The New Mexico Unfair Practices Act**

The New Mexico Unfair Trade Practices Act prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices."  N.M. Stat. Ann. §

57-12-3; see generally id. §§ 57-12-1 to 57-12-16.  To prove a violation of the

Act, Mr. Hauff must prove, among other things, that Safeco "knowingly" made a

false, misleading, or deceptive representation "in connection with" the sale of

services subject to the Act.  N.M. Stat. Ann. § 57-12-2(D); Stevenson v. Louis

Dreyfus Corp., 811 P.2d 1308, 1311 (N.M. 1991). "[F]ailure to deliver the quality

or quantity of goods or services contracted for" is an unfair trade practice.  N.M.

Stat. Ann. § 57-12-2(D)(17).  A litigant may bring claims under both the Unfair

Insurance Practices Act and the Unfair Trade Practices Act.  N.M. Life Ins. Guar.

Ass'n v. Quinn & Co., Inc., 809 P.2d 1278, 1290 (N.M. 1991).

Mr. Hauff does not argue that Safeco violated the Act when it sold Mr.

Hauff his policy.  Nor does he argue that Ms. Petterson's offer, in itself, misled

Mr. Ross.  And Mr. Hauff abandoned his claims that Safeco's valuation of general

damages or settlement conduct otherwise violated the Act.  Rather, Mr. Hauff

argues that Safeco's policy of paying net wages failed "to deliver the quality or

quantity of services pursuant to the contract, since the insurance policy says it

will pay what you are legally [entitled] to recover and their practice in adjusting

the plaintiff's claim does not fulfill that promise."  Doc. 51 at 19.

Mr. Hauff has not cited to any policy language, let alone evidence that

shows that the contract specified gross wages.  Mr. Hauff's only evidence for the

proposition that "the insurance policy says it will pay what you are legally

entitled to recover" is again the testimony of Mr. Allen.  Mr. Allen's deposition

does not quote or describe any contractual language on which he based his opinion.  Doc. 51, Ex. 3 at 96-97; see Matthiesen v. Banc One Mortg. Corp., 173 F.3d 1242, 1247 (10th Cir. 1999) (holding that unsupported conclusions of experts will not defeat summary judgment).  Because Mr. Allen's conclusions are unsupported opinion, this court disregards them.

As such, Mr. Hauff cites no significantly probative summary-judgment evidence demonstrating that Safeco's offer to pay after-tax wages was a false, misleading, or deceptive representation "knowingly made" "in connection with" the sale of services.  See Eisert v. Archdiocese of Santa Fe, 207 P.3d 1156, 1164 (N.M. Ct. App. 2009) (affirming summary judgment for defendants where plaintiff offered no evidence that defendants made knowing misrepresentations "at the time" services were contracted for); cf. Stevenson, 811 P.2d at 1312 (reversing judgment for plaintiff where "evidence was never presented that [the defendant] knowingly made any false or misleading statement of any kind").  The court therefore need not reach the issue of whether Mr. Hauff could prove compensatory or statutory damages under this or any other theory.

Because Safeco is not liable under any of these claims, it is not liable for punitive damages.  See New Mexico Uniform Jury Instructions-Civil § 13-1718.

## V.  Ms. Petterson's Individual Liability

Assuming that Mr. Hauff may proceed against Ms. Petterson individually, summary judgment is appropriate on these claims as well.  As discussed above,

-19-

neither Safeco nor Ms. Petterson violated the common law duty of good faith, the Unfair Practices Act or the New Mexico Insurance Code.  Mr. Hauff thus is also unable to seek punitive damages against her.

As well, Mr. Hauff sued Safeco and Ms. Petterson for breach of contract. Doc. 1, Ex. A at ¶¶ 27-29.  Ms. Petterson states in her declaration, however, that she was merely an employee of Safeco.  Doc. 45, Ex. B at ¶¶ 1-2.  No evidence shows that Ms. Petterson was a party to the policy.  Mr. Hauff concedes that Ms. Petterson owed no contractual duty to him.  Doc. 52 at 1-2.

"[I]t is well established that an agent acting within his authority for a disclosed principal is not personally liable unless he was expressly made a party to the contract or unless he conducts himself in such a manner as to indicate an intent to be bound."  Barnes v. Sadler Assocs. Inc., 622 P.2d 239, 240 (N.M. 1981) (citation omitted).  Summary judgment is thus appropriate.

Mr. Hauff's counsel has neglected to apprise the court of basic facts and has misconstrued a number of facts.  His brief does not follow our local rule, which requires him to specifically dispute the movants' facts by reference to their record citations.  D.N.M. L.R.-Civ. 56.1(b).  He has failed to adequately cite law to support his arguments or to apply the facts of the case to what law he cited. The unfortunate result of this is that, without evidence, he accuses his party opponents of bad faith.  The court reminds counsel that it is not its job to do counsel's work of organizing or formulating a party's arguments.  Cf. Hauff, 2009

WL 4782732 at *3, 4-6, 9-10 (Doc. 28).  Nor is it the court's function to "scour the record in search of evidence to defeat a motion for summary judgment." <u>Bombard v. Fort Wayne Newspapers, Inc.</u>, 92 F.3d 560, 562 (7th Cir. 1996).

Counsel also filed his briefs late without seeking an extension or citing excusable neglect.  <u>See</u> D.N.M. L.R.-Civ. 7.4(a).  Rather, after submitting his documents late, he argued that this court's local rules do not govern his conduct. Doc. 53.  But our local rules have the force of law and set forth our filing deadlines.  And, in a future case, the court may consider his failure to respond punctually as consent to grant a motion.  D.N.M. L.R.-Civ.7.1(b).  "An adequate representative needs to be able to conduct litigation on time, not to mention professionally and fairly."  <u>Hauff</u>, 2009 WL 4782732 at *9 (Doc. 28).  Counsel would do well to follow the rules that govern other parties.  <u>Id.</u> at *9-10 (chastising counsel for his repeated attempts to shift the blame for his own delays).

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that:

(1) Defendant Safeco Insurance Company of America's Motion for Partial Summary Judgment Dismissing Plaintiff's Common-Law and Statutory Tort Claims with Prejudice, filed May 26, 2010 (Doc. 45), is granted, and

(2) Defendant Morgan Petterson's Motion for Summary Judgment Dismissing All of Plaintiff's Claims with Prejudice, filed May 28, 2010 (Doc. 47), is granted.

DATED this <u>22nd</u> day of July 2010, at Santa Fe, New Mexico.

_____
United States Circuit Judge
Sitting by Designation

Counsel:
Houston Ross, Albuquerque, New Mexico, for Plaintiff.

Robert A. Corchine and Steven J. Leibel, Dines & Gross, PC, Albuquerque, New Mexico, Russell R. Yager and Manuel G. Berrelez, Vinson & Elkins L.L.P., Dallas, Texas, and Jennifer B. Poppe and Christopher V. Popov, Vinson & Elkins L.L.P., Austin, Texas, for Defendants.